**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NEVADA SAND CASTLES, LLC, <br><br>                 Plaintiff, <br>     vs. <br><br> GREEN TREE SERVICING LLC; *et al.*, <br><br>                 Defendants, <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION; and FEDERAL HOUSING FINANCE AGENCY, as Conservator of Federal National Mortgage Association, <br><br>                 Intervenors, <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOUSING FINANCE AGENCY, as Conservator of Fannie Mae, <br><br>                 Counterclaimants, <br>     vs. <br><br> NEVADA SAND CASTLES, LLC, <br><br>                 Counter-Defendant. | Case No.: 2:15-cv-0588-GMN-VCF <br><br> **ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 37), filed by Intervenors Federal National Mortgage Association ("Fannie Mae") and Federal Housing Finance Agency ("FHFA") (collectively "Intervenors"). Plaintiff/Counter-Defendant Nevada Sand Castles, LLC ("Plaintiff") filed a Response, (ECF No. 49), and Intervenors filed a Reply, (ECF No. 53).

## I. BACKGROUND

The present action involves the interplay between Nevada Revised Statutes § 116.3116 and 12 U.S.C. § 4617 as it relates to the parties' interests in real property located at 5710 E. Tropicana Avenue, #1029, Las Vegas, Nevada, 89122 (the "Property").  On September 20, 2006, Laura Forman ("Forman") obtained a loan (the "Loan") in the amount of $89,430 from lender Bank of America, N.A. ("BANA") that was secured by a Deed of Trust on the Property. (Deed of Trust, Ex. A to MSJ, ECF No. 37-1).[1]  Fannie Mae purchased the Loan on October 1, 2006, and has owned it ever since.  (*See* Curcio Decl., Ex. B to MSJ ¶¶ 4, 7).  On September 6, 2008, FHFA's Director placed Fannie Mae into conservatorships pursuant to HERA. (MSJ ¶ 3, ECF No. 37).

On October 25, 2010, Nevada Association Services, Inc. ("NAS"), as agent for Canyon Willow Tropicana HOA (the "HOA") recorded a Notice of Delinquent Assessment Lien against the Property for $1,324.88. (Not. of Delinquent Assessment Lien, Ex. I to MSJ).  Then, on December 10, 2010, NAS recorded a Notice of Default and Election to Sell, warning that the HOA would foreclose on its lien unless the assessment payments were brought up to date. (Not. of Default and Election to Sell, Ex. J to MSJ).  Plaintiff subsequently purchased the Property as the highest bidder at the November 1, 2013 foreclosure sale. (Foreclosure Deed, Ex. L to MSJ). At no time during the process did FHFA, as conservator of Fannie Mae, consent to the HOA's foreclosure. (*See* FHFA's Statement on HOA Super-Priority Lien Foreclosures, Ex. M to MSJ).

On January 7, 2011, BANA assigned the Deed of Trust to BAC Home Loans Servicing, LP, who was later acquired by BANA through merger. (Assignment of Deed of Trust, Ex. C to MSJ).  A second assignment from BANA to Green Tree Servicing LLC ("Defendant") was recorded on August 23, 2013. (Second Assignment of Deed of Trust, Ex. D to MSJ).

---

[1] The Court takes judicial notice of Exhibits A, C, D, I, J, K, L to Intervenors' Motion for Summary Judgment. (*See* ECF No. 37); *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Each of these documents is publicly recorded in the Clark County Recorder's Office.

Plaintiff initiated this action by filing the original complaint in state court on February 24, 2015, asserting claims for quiet title and declaratory relief against Defendant. (Compl. ¶¶ 13–18, Ex. A to Pet. for Removal, ECF No. 1-2).  Defendant subsequently removed the action to this Court on March 31, 2015. (Pet. for Removal, ECF No. 1).

On January 13, 2016, the Court entered an Order granting the parties' Stipulation that granted the Intervenors permission to intervene. (Order on Stipulation, ECF No. 28).  The Intervenors subsequently filed an Answer, asserting counterclaims against Plaintiff. (Ans. to Compl. & Counterclaims, ECF No. 29). [2]  Then, on July 5, 2016, Intervenors filed the pending Motion for Summary Judgment. (MSJ, ECF No. 37).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When

---

[2] The Intervenors counterclaims are (1) Declaratory Judgment and (2) Quiet Title. (Ans. to Compl. & Counterclaims 9:10–11:15).  These counterclaims are merely the converse of Plaintiff's claims in its Complaint. As such, a resolution of the claims in this case also resolves the Intervenors' counterclaims.

the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the

truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   DISCUSSION

In the instant Motion for Summary Judgment, Intervenors request that the Court declare that "12 U.S.C. § 4617(j)(3) preempts any Nevada law that otherwise would permit a foreclosure of an HOA lien to extinguish a property interest of Fannie Mae while it is under FHFA's conservatorship," "the HOA Sale did not extinguish Fannie Mae's interest in the Property and thus the Deed of Trust continues to encumber the Property," and "any interest of the Plaintiff in the Property is subject to Fannie Mae's first secured interest in the Property." (MSJ 17:1–7).

The Court addressed the applicability of 12 U.S.C. § 4617(j)(3) in *Skylights LLC v. Fannie Mae*, 112 F. Supp. 3d 1145 (D. Nev. 2015).  After addressing many different arguments regarding the applicability of § 4617(j)(3), the Court held that the plain language of § 4617(j)(3) prohibits property of FHFA from being subject to a foreclosure without its consent. *Id.* at 1159.

Here, Fannie Mae has held an interest in the Property since October 1, 2006.  (*See* Curcio Decl., Ex. B to MSJ ¶¶ 4, 7).  Accordingly, because FHFA held an interest in the Deed of Trust as conservator for Fannie Mae prior to the HOA foreclosure, § 4617(j)(3) prevents the HOA's foreclosure on the Property from extinguishing the Deed of Trust.

### IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Intervenors' Motion for Summary Judgment, (ECF No. 37), is **GRANTED**.  The Court finds that 12 U.S.C. § 4617(j)(3) preempts Nevada Revised Statute § 116.3116 to the extent that a homeowner association's foreclosure of its super-priority

lien cannot extinguish a property interest of Fannie Mae or Freddie Mac while those entities are under FHFA's conservatorship.  Accordingly, the HOA's foreclosure sale of its super-priority interest on the Property did not extinguish Fannie Mae's interest in the Property secured by the Deed of Trust or convey the Property free and clear to Plaintiff.

**IT IS FURTHER ORDERED** that Intervenors are granted summary judgment on all of Plaintiff's claims and Intervenors' counterclaims.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this  22  day of February, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court